904 F.2d 707
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mack JONES, Gwendolyn Jones and Mark Jones, Plaintiffs-Appellants,
v.
CITY OF DETROIT, Marion Henry, and Sandra Sampson,
Defendants-Appellees,
and
William Hart, William Wandrie, Patrick Tinney, Charles
Beasley, Ted Wasik, Daniel Dupuis, Arthur McNamara, Fred
Watkins, Ronald Ferguson, Ray Gilmore, Sgt. Wills, Sgt.
Paunovich, Sgt. George, P.O. Moore, P.O. Strauchman, P.O.
Dingwell and P.O. Quisenberry, Defendants.
 No. 89-1626.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1990.
 
 Before NATHANIEL R. JONES, KRUPANSKY and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellants, Mack, Gwendolyn and Mark Jones appeal the district court's order dismissing their civil rights action under 42 U.S.C. Sec. 1983.
 
 I.
 
 2
 On September 11, 1987, acting on information received from an informant, City of Detroit Police Officer Sandra Sampson secured a warrant to search the home of Mack and Gwendolyn Jones located at 28735 Brooks Lane, Southfield, Michigan. Southfield Police Officers were also present on the scene. Upon arriving home, accompanied by her sixteen year old son Mark Jones, Gwendolyn Jones found that her front door had been broken open and that her garage door was standing open. Gwendolyn Jones testified that upon entering the house, she was grabbed from the rear by a male officer, thrown against a wall, struck across the face and searched. She alleges that she was pushed into the living room, had her purse dumped on the sofa and searched again by a white female officer. Mark Jones testified that he too was grabbed from the rear, thrown against the wall, struck in the face, searched and handcuffed. Mrs. Jones is employed as a secretary at GM Corporation. At the time of the incident, Mack Jones, the husband, was a Vice President of Manufacturer's Bank. Mark Jones is a high school student.
 
 
 3
 Gwendolyn Jones testified that she asked the officers to explain what was happening but received no answer, and that she was questioned briefly by Officer Marion Henry of the City of Detroit Police Department, and asked to look through the house to ensure nothing had been taken, but she stated that the house had been so ransacked she could not tell if anything was missing. She claims she was then taken to the kitchen and told to sign a document she was not given an opportunity to read, after which the police left her home.
 
 
 4
 A telephone book, one antique shotgun, and $1020.00 were taken by the officers. The Joneses claim that the money was not returned. Officer Henry maintains that it was. No drugs, drug paraphernalia or other evidence of drug trafficking were found in the home, on Mrs. Jones or on her son.
 
 
 5
 Mack, Mark and Gwendolyn Jones commenced this action in state court on November 10, 1987. Initially, only the City of Detroit ("City") and William Hart were designated as defendants. The remaining defendants, Sandra Sampson, Marion Henry, William Wandrie, Patrick Timney, Charles Beasley, Ted Wasik, Daniel Dupuis, Arthur McNamara, Dred Watkins, Ronald Ferguson, Ray Gilmore, Sgt. Willis, Sgt. Paunovich, Sgt. George, Police Officer Moore, Police Officer Strauchman, Police Officer Dingwell and Police Officer Quisenberry, were designated as Officers John Doe I, II and III. On December 9, 1987, the City, the only defendant that had then been served, removed the action to United States District Court for the Eastern District of Michigan.
 
 
 6
 On May 19, 1988, plaintiffs moved for leave to file an amended complaint in which they would name all the defendants. The district court granted the motion in a stipulated order on June 27, 1988. It does not appear that the Joneses filed an amended complaint until October 20, 1988, though a copy of the proposed complaint was attached to the Motion to Amend. The City of Detroit and Officers Henry and Sampson answered the amended complaint on October 17, 1988--three days before it was actually filed.
 
 
 7
 On March 17, 1989, all defendants except Henry, Sampson and the City moved to quash service and dismiss the action because they had not been served with summons until 120 days after they were named as defendants. The Joneses did not oppose this motion. On April 12, 1989, the district court granted the motion to dismiss pursuant to Fed.R.Civ.P. 4(j). On December 14, 1988, the City, Sampson and Henry moved for summary judgment. On February 23, 1989, the district court entered a memorandum and order granting summary judgment in favor of Henry, Sampson and the City, and dismissing the case with prejudice. This timely appeal followed.
 
 II.
 
 8
 We review de novo the decision of the district court to grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Fed.R.Civ.P.Rule 56 provides that a court may enter summary judgment on a claim if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The moving party is 'entitled to a judgment as a matter of law' [where] the nonmoving party has failed to make a sufficient showing on an essential element of her case...." Celotex, 477 U.S. at 323 (citation omitted). The non-moving party cannot merely rest on the allegations of the pleadings, but must present " 'significant probative evidence tending to support the complaint.' " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (citation omitted).
 
 
 9
 The Joneses allege that the district court erred in granting summary judgment for Henry and Sampson because issues of material fact remain as to whether Officer Sampson misled the magistrate regarding the use of a police informant in order to obtain the search warrant, and whether Sampson and Henry were the officers who violently grabbed Mark and Gwendolyn, threw them against the wall and struck them across the face. At oral argument, the Joneses also asserted that because Officer Henry was the senior officer on the scene, he should be held responsible since he tolerated the behavior of the officers under his command.
 
 
 10
 First, the Joneses claim that Sampson misled the magistrate by implying that she personally had worked with this informant over 100 times, when she testified in the instant proceeding that she had only worked with him a few times. The district court determined that Officer Sampson had not misled the magistrate in her statement that the police informant had been used over 100 times, because a fair reading of Sampson's statement would not indicate that she personally had worked with this informant, but that the police department had made use of the informant in over 100 investigations. We agree with the district court's reading of Sampson's representation to the magistrate.
 
 
 11
 Second, the deposition testimony of Gwendolyn and Mark Jones shows only that some police officers assaulted and battered them during the raid. The Joneses could not identify Sampson and Henry as the officers who had mistreated them. They also were unable to establish the identity, badge numbers or race of the officers who mistreated them, or even whether the abusive officers wore City of Detroit uniforms. Both officers swore they had not assaulted the Joneses. The Joneses also failed to establish that Officer Henry was present at the time of the alleged assault, or that he knew or should have known of abusive behavior by the officers he commanded. Thus, the district court correctly concluded that no question of material fact remained as to the assault of Gwendolyn and Mark Jones and properly granted summary judgment in favor of the officers.
 
 III.
 
 12
 The appellants next claim that the district court erred in dismissing their complaint on the grounds that official or qualified immunity precludes liability against the City or the officers because the officers. In support of this argument, they again point to Sampson's alleged "misleading statements" to the magistrate in order to procure the search warrant; to the physical violence suffered by Gwendolyn and Mark Jones upon entering their home, and to the fact that money and property removed by the police during the raid has allegedly not been returned.
 
 
 13
 In Smith v. Dept. of Public Health, 428 Mich. 540, 410 N.W.2d 749, 772 (1987), the court held that there is no "intentional tort exception to governmental immunity." Id. at 544. In White v. City of Vassar, 157 Mich.App. 282, 403 N.W.2d 124 (1987), the Michigan Court of Appeals held that the hiring and training of police officers is a governmental function and therefore a claim against a city for negligent hiring and training of police officers is barred by governmental immunity. Thus, the Jones' common law tort claims are not actionable in Michigan.
 
 
 14
 The violations of their civil rights which may have been committed by police officers during the raid, might have been actionable under Sec. 1983 if they had been able to determine who the arresting officers were. Also, any conversion claims the Jones' may have are adequately addressed by Michigan post-taking tort remedy for the wrongful taking of property. See Parratt v. Taylor, 451 U.S. 527 (1981).
 
 
 15
 The appellants mistakenly argue that governmental immunity does not apply to the City because such a defense does not exist under 42 U.S.C. Sec. 1983. The City has not raised governmental immunity as a bar to liability to the Sec. 1983 claims, but only in response to the common law tort claims raised by the Jones'. Moreover, a municipality cannot be held liable under 42 U.S.C. Sec. 1983 under a theory of respondeat superior. Rather, a plaintiff must plead and prove an injury caused by an action taken "pursuant to official municipal policy of some nature." Monell v. New York City Dept of Social Services, 436 U.S. 658, 691 (1978). Nowhere in the Jones' brief or before the district court have they attempted to identify such a policy underlying the alleged violation of their civil rights. At oral argument, the Joneses alleged that families in affluent white neighborhoods would never receive this kind of treatment. However, they presented no evidence to the district court in support of this allegation. Neither have they raised an equal protection claim, because the appellants cannot point to anything in the record to support the claim that the treatment they received was in any way connected to racial discrimination. They cannot even determine the race of the officers who assaulted them. Accordingly, we find that the district court did not err in granting summary judgment for the City as a matter of law.
 
 IV.
 
 16
 The Joneses final claim is that the district court's order dismissing all defendants with the exception of Sampson and Henry dated April 12, 1989, is inconsistent with its order granting summary judgment in favor of Sampson and Henry. The district court dismissed all officers except Sampson and Henry under Fed.R.Civ.P. 4(j) because only Sampson and Henry were properly served. The City was dismissed because the Joneses failed to present a claim of a pattern of wrongdoing to attach municipal liability under Sec. 1983, and because no common law tort liability attaches under Michigan law. We find no error or inconsistency in the fact that the court took both actions in one order to tie up loose ends in the case. Thus, we find that this claim lacks merit.
 
 V.
 
 17
 For the above stated reasons, the judgment of the district court is AFFIRMED.